UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSHUA M. EVANOFF, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:21-CV-328 JD |

## OPINION AND ORDER

Joshua Evanoff applied for Social Security disability benefits, alleging he is unable to work due to his chronic back pain arising from degenerative changes to several discs. An Administrative Law Judge, or ALJ, found Mr. Evanoff retained the capacity to perform sedentary work with certain restrictions and there were a significant number of jobs he could still perform in the economy. Mr. Evanoff's claim for benefits was denied and he now appeals that finding. For the reasons set forth below, the Court reverses and remands for further proceedings, holding that the ALJ erred by failing to articulate the persuasiveness of a medical source, failing to explain the weight given to Mr. Evanoff's testimony, and failing to include a significant limitation in the RFC.

A.   **Factual Background**

Mr. Evanoff filed for Title II disability benefits on August 5, 2019, alleging disability beginning on October 8, 2017. He has reported suffering from chronic back pain caused by degenerative disk disease, depression, and anxiety. (R. 26; 316.) Mr. Evanoff alleges he has

suffered from back pain for many years, but it became disabling in 2017. On December 17, 2020, Mr. Evanoff participated in a hearing before an ALJ. Primarily due to his back pain, Mr. Evanoff testified he is unable to maintain full-time employment, requires assistance from his parents to complete household tasks, and experiences limitations to his mobility (R. 55; 64–68). Mr. Evanoff testified that his pain is variable; his worst days are when he experiences back spasms (R. 68.) On these days, he is limited to reclining with a hot pad. Mr. Evanoff also testified that his back is aggravated by activity (R. 55.)

Mr. Evanoff is currently employed in a part-time capacity as a baker (R. 25.) Mr. Evanoff testified that he was hired by a friend and the current position accommodates his need for frequent and unscheduled breaks due to his back pain (R. 52–54.) Mr. Evanoff also testified that he sometimes leaves tasks unfinished if he cannot complete them due to his pain. Mr. Evanoff's last significant employment was as a mold setter and machine operator. (R. 73.) He testified that he left that position due to health-related absences and collected short-term and long-term disability (R. 49; 55.) Previously, he worked as a land surveyor. (R. 73.) In prior roles, Mr. Evanoff's work required "swinging sledge hammers and lifting manhole covers." (R. 510.)

Medical imaging confirms that Mr. Evanoff suffers from degenerative changes to his lumbar spine. (R. 316.) Mr. Evanoff's medical providers have indicated that he is not a candidate for spinal fusion surgery due to his age and the location of the injury. (R. 579.) Mr. Evanoff completed physical and occupational therapy and takes Percocet for pain management, which he reports reduces his pain by about 50%.

The ALJ found Mr. Evanoff's lumbar spine degenerative arthritis and disc disease with foraminal stenosis constituted severe impairments and that his depression and anxiety were non-severe impairments. (R. 25–26.) The ALJ found these conditions did not meet or exceed a

listing, and that Mr. Evanoff could not perform his past relevant work. (R. 28; 32.) The ALJ found that Mr. Evanoff retained the ability to perform sedentary work with minor limitations, including a sit/stand option. Mr. Evanoff's residual functional capacity determination, or RFC, presents a claimant seemingly capable of many sedentary jobs in the competitive economy without major accommodations. In total, it reads:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that the claimant is able to lift or carry, including upward pulling, up to twenty pounds occasionally and ten pounds frequently. The claimant is able to stand or walk *with normal breaks* for a total of two hours out of an eight-hour workday and sit for a total of about six hours in an eight-hour workday. *The claimant would need a sit/stand option but would not need to leave the work place*. The claimant could occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch and crawl. The claimant is unable to climb ladders, ropes or scaffolds. The claimant should avoid concentrated exposure to wetness and hazards such as machinery or heights. There would be no limitations regarding use of his hands for fine or gross manipulation.

(Emphasis added). Based on the RFC, the ALJ concluded that Mr. Evanoff could no longer perform his previous relevant work. The ALJ found that Mr. Evanoff could perform other jobs in the economy, including document preparer, cutter and paster, and tube operator, and that there are a significant number of these jobs in the national economy. (R. 33–34.) As a result, the ALJ found that Mr. Evanoff did not qualify as disabled. After the Appeals Council denied review, Mr. Evanoff filed this action seeking judicial review of the Commissioner's decision.

**B.     Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S.Ct.

1148, 1153 (2019); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id*. An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

C.   **Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the national economy.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the

Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D.     Discussion**

Mr. Evanoff raises three arguments in support of remand. First, he argues the ALJ erred by failing to assign weight to the opinion of his examining occupational therapist, Shirley Drier. Second, Mr. Evanoff argues the ALJ failed to include all supported limitations in the RFC. Finally, Mr. Evanoff argues that the number of jobs determined by the vocational expert, 30,000, did not constitute a significant number of jobs within the national economy. The Court addresses only the first two of Mr. Evanoff's arguments and instructs the parties to consider the remaining argument on remand. The Court agrees with Mr. Evanoff that the ALJ erred by failing to articulate the persuasiveness of Ms. Drier's opinion and by failing to include all supported limitations in the RFC. As a result, the Court finds remand in order to address these issues is proper.

The ALJ considered four medical opinions in her written decision: the opinions of two agency consultant physicians, Dr. Sands and Dr. Brill, and the opinions of two agency psychological consultants, Donna Unversaw and J. Gange. (R. 32.) Each agency consultant reviewed Mr. Evanoff's medical records. The ALJ found the psychologists' opinions persuasive and found Dr. Sands and Dr. Brill's opinions "largely persuasive," noting their failure to include a sit/stand option for Mr. Evanoff. The ALJ cited to records from Mr. Evanoff's examining physical therapist but did not make an explicit finding regarding the persuasiveness of her testimony. (R. 31–32.) The ALJ did not cite to nor explicitly weigh the persuasiveness of Mr. Evanoff's examining occupational therapist, Shirley Drier. (R. 633.)

6

### *(1) Failure to Address Ms. Drier's Opinion*

Mr. Evanoff argues the ALJ erred by failing to address the opinion of his examining occupational therapist, Shirley Drier. The Commissioner does not contest whether the ALJ erred, instead focusing on whether that error was harmless. (DE 16 at 6.) For claims filed after March 27, 2017, the Court analyzes whether the ALJ satisfied her duty to determine and articulate the "persuasiveness" of medical opinions (in lieu of the prior "give weight" standard). 20 C.F.R. § 404.1520c. While Mr. Evanoff did not use the terminology appropriate for the latest version of the regulations, given the interplay between the concepts of evidentiary weight and persuasiveness, it is not a radical inference to understand his argument about "weight" as challenging the ALJ's failure to articulate the persuasiveness of Ms. Drier's opinion.

Although Ms. Drier, as an occupational therapist, is not an "acceptable medical source" under 20 C.F.R. § 404.1502, she is a "medical source" under 20 C.F.R. § 404.1502(d), capable of providing evidence about the severity and effects of impairment, as well as evidence more generally."[1] *Alcantara v. Astrue*, 257 F. App'x 333, 335 (1st Cir. 2007). A medical source may offer a "medical opinion" under the regulations. 20 C.F.R. § 404.1513(2). While the ALJ is not required to engage with the minutiae of each medical record, she must articulate how she considered the persuasiveness of the medical opinions at the source level. 20 C.F.R. § 404.1520c(b)(1). The adjudicator is not required to accord controlling weight to opinions from medical sources who are not "acceptable medical sources" as defined by 20 C.F.R. § 404.1502(a), but she must articulate a determination of how persuasive she finds their

---

[1] "The term 'acceptable medical source' encompasses treating physicians, psychiatrists, psychologists, etc." *Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1038 (N.D. Ind. 2010). As relevant here, "[m]edical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law . . . . 20 C.F.R. § 404.1502.

opinions. 20 C.F.R. § 404.1520c(b). The ALJ did not mention Ms. Drier's opinion in her decision or cite to her opinion at any time in the report. Accordingly, the ALJ did not articulate the persuasiveness of Ms. Drier's opinion at the source level. As such, the ALJ's decision "offers no clue as to whether she *examined* the full range of medical evidence as it relates to his claim." *Zurawski*, 245 F.3d at 888 (emphasis original). Without any discussion of Ms. Drier's opinion, the Court is unable to trace the ALJ's path of reasoning. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000). Further, as discussed in more detail below, Ms. Drier's opinion conflicts with the RFC determination. "If the RFC determination conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. The ALJ's decision does not meet this standard, and the ALJ's failure to engage with Ms. Drier's opinion constitutes reversible error.

The Commissioner argues the ALJ's failure to consider Ms. Drier's opinion was harmless because the opinion is "in large part[] consistent with the ALJ's finding regarding Plaintiff's residual functional capacity," and because the "ALJ discussed evidence from sources who had the chance to review Ms. Drier's report." (DE 16 at 6.) The Court does not find these arguments persuasive. An error is harmless if "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Ms. Drier's opinion supports a major limitation not included in the RFC: Mr. Evanoff's need for frequent breaks. The RFC does not discuss Mr. Evanoff's break needs, noting only that "[t]he claimant is able to stand or walk with normal breaks for a total of two hours out of an eight-hour workday and sit for a total of about six hours in an eight-hour workday." (R. 25.) Ms. Drier notes within her report the need for frequent breaks during tasks, a

8

limitation Mr. Evanoff also cited with emphasis during the oral hearing and has alleged allows him to maintain his current part-time employment at a friend's bakery (R. 50, 63.) Ms. Drier writes: "He does do housekeeping tasks but only small portions of the task at a time[,] such as vacuuming half a room with a break before he completes the task." (R. 629.) Ms. Drier further found Mr. Evanoff's performance consistent with his reported levels of activity in the home environment (R. 631) and noted two instances where he reported pain upon completing a task or stopped a task due to pain. (R. 630.) Ms. Drier's report substantiates Mr. Evanoff's testimony regarding a significant limitation; notably, few other medical records mention breaks explicitly. While other records are not inconsistent with Mr. Evanoff's testimony regarding his break needs, Ms. Drier's opinion potentially bridges a credibility gap by specifically corroborating Mr. Evanoff's testimony. The Court cannot say with great confidence that the agency will reinstate its decision on remand upon considering the record and Ms. Drier's opinion. *Willoughby v. Astrue*, 891 F.Supp.2d 976, 983 (N.D. Ill. 2012). The error was not harmless.

The Court is particularly hesitant to find the error harmless because Mr. Evanoff's break needs were outcome determinative. At the hearing, the ALJ questioned the Vocational Expert, or VE, about a hypothetical candidate with an RFC similar to the one adopted in the ALJ's decision. The VE responded with several jobs that hypothetical candidate would be capable of performing. (R. 76–77.) The ALJ then asked about the same hypothetical candidate with several rest-related modifications, including greater-than-average break needs. (R. 78.) The VE responded that a candidate whose additional breaks caused off-task behavior up to 25% of the time would far exceed the Department of Labor's Productivity standard, which is about 10%. The VE noted that this high level of off-task behavior, in combination with other losses to productivity such as unscheduled absences, would be "work preclusive." (R. 79.) Had the ALJ

9

adopted an RFC consistent with the break needs noted in Ms. Drier's opinion, Mr. Evanoff's ultimate disability determination likely would have changed. For these reasons, the Court cannot find the error in failing to determine the persuasiveness of Ms. Drier's opinion was harmless.

As to the Commissioner's second argument, even assuming an ALJ could properly consider otherwise undiscussed evidence via other sources, evidence of other sources' review of Ms. Drier's opinion is scant. Ms. Drier's opinion is dated September 12, 2018, but it appears the opinion was not received into the record until the oral hearing in December 2020. (R. 43–44.) This casts doubt upon the assertion that sources who completed their reports prior to December 2020 incorporated Ms. Drier's opinion. As previously noted, the ALJ's RFC determination is highly consistent with the agency non-examining reviewing physicians. Neither of those physicians list Ms. Drier's report as part of the evidence received or anticipated, despite completing their reports after Ms. Drier. (R. 78; 90.) Still, the Commissioner argues a cursory reference to occupational therapy in another medical record is sufficient to capture Ms. Drier's opinion. The Commissioner asserts that "Ms. Drier performed the evaluation at the request of nurse practitioner Ms. Andree, who treated Plaintiff at Lakeshore Bone and Joint Institute and recommended a functional capacity evaluation in June 2018. The ALJ discussed records from Lakeshore Bone and Joint Institute following Ms. Drier's evaluation, noting that physical therapy at Lakeshore provided Plaintiff some relief." (DE 16 at 6–7.) The records referenced mention occupational therapy in only a cursory manner and do not capture the substance of Ms. Drier's opinion or contain the critical analysis of Mr. Evanoff's break needs. (R. 368; 371–72.) One June 2018 reference wielded by the Commissioner reads only, "[h]e [Mr. Evanoff] also has and (sic) FCE that needs completed." (R. 368.) Therefore, it is not accurate to say Ms. Drier's opinions

10

were incorporated into the opinions of other sources discussed by the ALJ. The Court thus maintains its finding that the ALJ's error was not harmless, and remand is proper.

### *(2) Improper Evaluation of RFC*

Mr. Evanoff also asserts that the ALJ erred in calculating the RFC for several reasons, including finding that Mr. Evanoff's statements were "not entirely consistent" with the evidence. (DE 15 at 11.) The ALJ erred by seemingly discrediting Mr. Evanoff without making specific findings regarding which of his statements she found inconsistent with other evidence. In addition, the ALJ further erred by failing to include a supported limitation in Mr. Evanoff's RFC.

When evaluating the claimant's statements about the intensity, persistence, and limiting effects of symptoms including pain, the ALJ must explain which of an individual's symptoms she found consistent with the evidence in his or her record and how her evaluation of the individual's symptoms led to her conclusions. SSR 16-3P. The ALJ wrote only of Mr. Evanoff: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 30.) The Seventh Circuit has previously frowned upon use of similar "meaningless boilerplate," which fails to yield specific information regarding which statements were found noncredible. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). The decision does *not* further explain the ALJ's reasoning for discrediting Mr. Evanoff. The decision presents without comment Mr. Evanoff's two-month abstinence from pain medication (referred to as a "drug holiday" by the ALJ) and doctor's advisement not to undergo spinal surgery, perhaps to cast aspersions upon Mr. Evanoff's credibility.[2] (R. 27–28.) The ALJ also

---

[2] The Court cautions against the ALJ's apparent desire to substitute her own medical judgment for that of Mr. Evanoff's examining spinal surgeons, as is evident in the oral hearing transcript: "There's consistent history of

appears to have found Mr. Evanoff's part-time employment contradictory, though he testified he is able to maintain his bakery job because his employer is a friend who tolerated frequent breaks and ceased his previous full-time work due to his alleged condition. (R. 55.) However, any such judgment is only suggested, and there is no clear nexus between these facts and Mr. Evanoff's credibility or the ultimate RFC determination. These asides are insufficient to form a credibility determination without more explicit findings. *See Spiva*, 628 F.3d at 353. The connection, if any, the ALJ drew from this information is not readily apparent nor preserved for the record. Without such information, the logical bridge is absent, and this Court cannot determine whether the ALJ's ultimate disability determination was based upon substantial evidence. *See Payne v. Colvin*, 216 F. Supp. 3d 876, 887–888 (N.D. Ill. 2016). On remand, the ALJ must explain which of the claimant's statement she found inconsistent and how that determination affected her conclusions.

Mr. Evanoff's capacity as described by the ALJ is far greater than that presented by Mr. Evanoff. Mr. Evanoff emphatically describes his back pain as inconsistent but extreme. He notes the limitations it presents on his worst days, such that "the only thing [he] can do is lay on a hard surface, either on the floor or a stiff mattress with a heating pad and allow the muscles to settle down." (R. 52; 57.) He describes himself as being able to carry a gallon of milk back and forth from the refrigerator on an average day and two on a good day. (R. 57.) He testified he could not stoop, kneel, crouch, crawl, or bend without pain even on his good days, and could not kneel, crouch, or crawl at all on his bad days. (R. 60.) In contrast, the RFC's view is much sunnier: it describes Mr. Evanoff as able to "carry up to twenty pounds occasionally and ten pounds

---

surgeons saying that he's not eligible [for spinal surgery]. The location of the injury does not compute when I look at the MRIs and stuff like that. I mean, certainly these are locations that are commonly dealt with for surgeons. We had an L5-S1, L4-L5, L3-L4. Those are back in there fusions sometimes so that does not compute. Then, indicating that age—if somebody has surgical back, it doesn't matter if they're 10 or if they're 20 or if they're 50. Sometimes they use that excuse for a knee that's stiff [phonetic] but that's not generally a reason why somebody wouldn't have surgery for a back." (R. 57.)

frequently" as well as being able to "occasionally balance, stoop, kneel, crouch and crawl." (R. 29.) Though Mr. Evanoff's physical therapy records do not show him meeting his goal of sitting for one hour (R. 334; 422) and records indicate that both sitting and standing aggravate Mr. Evanoff's condition (R. 599), the RFC finds Mr. Evanoff could sit for a total of about six hours in an eight-hour workday if afforded a sit/stand option. (R. 29.) It appears the RFC's optimistic view is adopted from those of the non-examining agency physicians, whose reports echo these sentiments. (R. 88–89; 100–102.) It is implicit that the ALJ found Mr. Evanoff's testimony almost entirely inconsistent with the evidence, but the ALJ's decision does not explicitly state as such. The ALJ's failure to specifically state which of Mr. Evanoff's statements she found inconsistent or why she seemingly discarded his testimony entirely renders the logical bridge to her conclusions insufficient.

Finally, as discussed throughout, the ALJ failed to address a supported limitation in the RFC. Though the ALJ must only "minimally articulate his reasoning," the ALJ's decision in Mr. Evanoff's case totally omits discussion of his need for breaks. *Simms v. Astrue*, 599 F. Supp.2d 988, 1001 (7th Cir. 2009). Throughout the record, it is clear Mr. Evanoff claims that his pain is highly variable. The record indicates that while Mr. Evanoff has some good days, his back pain can render him unable to do anything but recline on a heating pad. Even on regular days, Mr. Evanoff seemingly requires frequent breaks to be able to complete tasks. These factors are totally absent from the RFC and the ALJ's decision. If a claimant is forced to stop work entirely and lay down, and if these episodes occur with some frequency, it is irrelevant that the claimant has fine motor control—his other limitations preclude employment. Tellingly, one hypothetical posed to the VE included this limitation, which the VE found work-preclusive. However, the ALJ's decision provided no explanation for the selected RFC, which did not include the limitation.

Where an ALJ "later issues a decision relying on one hypothetical and not the others, the Judge does have to explain why the others were rejected." *Payne v. Colvin*, 216 F. Supp. 3d 876, 889 (N.D. Ill. 2016). The ALJ's complete omission of discussion of breaks or why the second hypothetical was rejected does not meet this standard. On remand, the ALJ must include a limitation for frequent and significant breaks in the RFC or specifically explain why she has not.

Accordingly, the Court reverses and remands for additional proceedings, during which the parties may also address the other arguments Mr. Evanoff has raised on appeal. The Court also instructs the ALJ to articulate an explicit persuasiveness determination for all of Mr. Evanoff's medical opinions at the source level as required by 20 C.F.R. § 404.1520(b)(1). As the record is not so one-sided as to compel a finding of disability, Mr. Evanoff is not entitled to an outright award of benefits.

**E.     Conclusion**

For those reasons, the court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: November 7, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court